ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
2008 OCT 28 AM 11: 58
CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| ALBERT W. MCDANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 108-110 |
| | ) | |
| RONALD STRENGTH, Sheriff; | ) | |
| WILLIAM E. JOHNSON, Major; MS. | ) | |
| TURNER, Deputy Jailor; CAROLINE LEE, | ) | |
| Director of Nursing; and C.M.S., Contract | ) | |
| Medical Staff at Richmond County Jail, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at the Richmond County Jail ("the Jail") in Augusta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

# I. BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. In his complaint, Plaintiff names as Defendants: (1) Ronald Strength, Sheriff, (2) William E. Johnson, Major, (3) Ms. Turner, Deputy Jailor, (4) Caroline Lee, Director of Nursing, and (5) C.M.S., Contract Medical Staff at Richmond County Jail. (Doc. no. 1, pp. 1, 4). Plaintiff, a black male with "HIV-AIDS" alleges claims of discrimination and deliberate indifference toward his medical needs and his safety, as well as claims regarding the general conditions of confinement at the Jail. (See generally doc. no. 1). Plaintiff states that he has named Sheriff Strength as a Defendant because the Sheriff has allegedly failed to ensure that his staff does their jobs professionally, and he is responsible for their actions. (Id. at 2). Additionally, it appears that Plaintiff is claiming that Sheriff Strength in his capacity as Sheriff, implemented the policy to segregate inmates with HIV-AIDS. (Id.). Plaintiff has named Major Johnson as a Defendant because, as an "administrat[ive] figure," he allegedly failed in his duties to ensure that Plaintiff had the proper medical treatment and was treated equally to all other inmates. (Id.). Plaintiff has named Deputy Jailor Turner as a Defendant for her role in his claims for deliberate indifference to his safety. (Id.). Plaintiff has named the Director of Nursing, Caroline Lee, as a Defendant for her role in his medical deliberate indifference claims. (Id.). Finally, Plaintiff has named C.M.S. as a Defendant for its responsibility to employ and properly train its staff before contracting them out. (Id. at 3).

Plaintiff alleges that he is disabled because he has HIV-AIDS. (Id. at 10). He was arrested and booked into the Jail on June 4, 2008. (Id. at 13). On June 6th or 7th, Plaintiff put in a medical sick call form requesting a special diet, as his illness requires that he

consume a high caloric and high fiber diet. (Id.). According to Plaintiff, approximately two days later, he was transferred to the Charles B. Webster Detention Center. (Id.). After his transfer, Plaintiff re-asserted his request for a special diet and explained to a nurse that he had HIV-AIDS. (Id.). Plaintiff contends that, in response to his comment that he had HIV-AIDS, the nurse informed him that all inmates with HIV-AIDS were supposed to be housed at the Jail. (Id.). Plaintiff was then asked to sign a release of information form for MCG to verify his HIV-AIDS status. (Id.). At first, Plaintiff refused to sign the release form, but when he realized that the medical personnel purportedly were going to "ignore" Plaintiff's medical needs until he signed the form, he did in fact sign the form. (Id.). Once the form was signed, lab (blood) work was performed on Plaintiff, and he was transferred back to the Jail. (Id.).

Upon his return to the Jail, he was housed on the west wing of the third floor ("west wing"), which is a medical wing. (Id.). Plaintiff alleges that the west wing is divided into two sections, one for inmates with HIV-AIDS and the other for inmates in protective custody. (Id. at 14). Plaintiff alleges that even though the west wing is a medical wing, where inmates with weakened immune systems are housed, it is not sterile; the air ducts "blow out a tremendous amount of dust"; and the toilets in cells 2 and 3 back up. (Id. at 10). Furthermore, Plaintiff alleges that the portions of food have decreased in the time that he has been housed at the Jail, and that the food is not served at the right temperature. (Id.).

Concerning Plaintiff's alleged medical indifference claims, he notes that thirty-seven (37) days passed after his arrest before he was seen by a doctor; however, nothing was done at that point because his file was incomplete. (Id. at 16). Thus, according to Plaintiff, forty-seven (47) days passed after his arrest before he received any medication for his HIV-AIDS.

3

(Id.). Additionally, according to Plaintiff, he became so distressed that he was not receiving his medication that his "bi-polar depression and borderline schizophrenia" escalated to a point where he was hearing voices, was having suicidal thoughts, and was having thoughts of hurting others. (Id. at 5). Plaintiff maintains that he has calmed down now, "but only because of the medication he was forced to take."[1] (Id.).

Plaintiff also alleges that since his incarceration began at the Jail, he has lost sixty-six (66) pounds. (Id. at 17). As a result of Plaintiff's weight loss, one of his doctors prescribed him a special diet (apparently a double portion). (Id.). However, according to Plaintiff, he is not receiving the special diet as prescribed by the doctor. (Id.). Additionally, Plaintiff notes that his illness causes him to be very tired, and on some days it is physically difficult for him to get out of bed. (Id. at 11). On such days, if he has not gotten out of bed by the time cell inspections occur, he is placed in lockdown as a punishment. (Id.).

Turning next to Plaintiff's allegations of discrimination, Plaintiff argues that he is being discriminated against because black inmates with HIV-AIDS are housed in the west wing and are not permitted to be housed in any other area at the Jail.[2] (Id. at 14). Plaintiff notes that his "freedom of choice was taken away from [him] when [he] was forced" to be housed in the west wing. (Id.). He further notes that he is not allowed to be housed with

---

[1] Plaintiff notes that on occasion, the Jail runs out or does not have available, some of the medications he requires. (Doc. no. 1, p. 17).

[2] Plaintiff contends that the west wing is comprised of "98%-99% black men." (Doc. no. 1, p. 10). Plaintiff further contends that the inmates housed in the west wing cells are not, and will not be, treated fairly because of their race and disease, and the stigma that goes along with them. (Id. at 17).

4

"non-infected" inmates, and is isolated from the general population because he does not have "recreation or meals or anything else with other inmates." (Id.). In addition, Plaintiff is concerned that he has no confidentiality/privacy concerning his illness. (Id.). First, Plaintiff argues that "all staff from janitors to sheriff and all inmates know that the 3rd floor west wing houses the HIV-AIDS patients." (Id. at 11). Second, Plaintiff alleges that the "pill books" for inmates on the west wing are "white, with pink paper and big black letters that read Diabetic/HIV"; Plaintiff notes that the letters are "so big" they can be read from across the room. (Id. at 15). However, the "pill books" for all other inmates are blue. (Id.).

Next, Plaintiff contends that inmates on the west wing are not provided with the same medical treatment as the inmates in the medical wing on the first floor. (Id. at 11). As an example, Plaintiff provides that the first floor medical wing has a "close circuit tv monitor." (Id.). Thus, according to Plaintiff, even if the inmates on the first floor are in lockdown they can be monitored and will receive assistance if needed, while inmates on the west wing, if on lockdown, have no way of getting help if needed. (Id.).

Lastly, Plaintiff claims that Defendant Turner is deliberately indifferent to his safety. (Id. at 15). Plaintiff claims that Defendant Turner "pits the inmates against each other." (Id.). Plaintiff alleges that he was "warned and threatened by several inmates after the deputy-jailor to[ld] them to be mad at [him] and not her for losing their [yard] privilege." (Id.). According to Plaintiff, the same inmates still do not talk to him and are very aggressive toward him. (Id. at 16). Plaintiff states that he lives in fear everyday that he will be attacked by one of these inmates. (Id.).

5

As relief, Plaintiff would like an "end put" to the segregation and discrimination allegedly occurring at the Jail. (Id. at 7). He also seeks monetary damages in the amount of "$12,500,000.00, or more if at all possible...." (Id.).

## II. DISCUSSION

### A. Discrimination Based On Race

First, Plaintiff contends that he was discriminated against on the basis of his race. To state a valid Equal Protection claim, a prisoner must show: (1) that he has been treated differently from other "similarly situated" inmates, and (2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*). Here, Plaintiff has failed to indicate that he was treated differently than other "similarly situated" inmates. In his complaint, Plaintiff alleges that he is being discriminated against on the basis of his race because he has been assigned to the west wing, a medical wing where inmates, such as Plaintiff, with HIV-AIDS are housed. He contends he is being racially discriminated against because 98%-99% of the inmates housed in the west wing are black. However, as repeatedly noted by Plaintiff, he has been assigned to the west wing because of his HIV-AIDS status, and not his race.[3] This allegation is insufficient to demonstrate that Plaintiff was treated differently than other similarly situated inmates.

Likewise, Plaintiff has not alleged that any Defendant acted with a discriminatory intent toward him by placing him in the west wing. See Elston v. Talladega County Bd. of

---

[3] To the extent Plaintiff contends that he was discriminated against on the basis of his HIV status, that allegation is discussed *infra*.

6

Educ., 997 F.2d 1394, 1406 (11th Cir.1993) (requiring plaintiff to demonstrate that challenged action was motivated by an intent to discriminate in order to establish equal protection violation). Thus, Plaintiff has failed to state a claim upon which relief can be granted.

**B.     Segregation Based on HIV status**

Next, it appears that Plaintiff contends that he is being discriminated against on the basis of his HIV-AIDS status because he is being housed in the west wing along with all other prisoners with HIV-AIDS. However, Plaintiff's claim does not form a basis for relief. In Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991), the Eleventh Circuit held that, in the absence of any other allegations, the involuntary placement of HIV prisoners in separate HIV dorms does not violate the prisoners' constitutional rights. Id. at 1521. Further, any encroachment this segregation had on the privacy rights of inmates with HIV was reasonable in light of the "inmate interests at stake (both [HIV] and general population), and the difficult decisions that the [Department of Corrections] must make in determining how best to treat and control . . . the spread of a communicable, incurable, always fatal disease." Id. Therefore, placing Plaintiff in segregation due to his HIV-AIDS status is not unconstitutional, and Plaintiff has failed to state a claim upon which relief can be granted for his HIV-AIDS segregation.

**C.     Claims Regarding General Conditions at the Jail**

Plaintiff's claims concerning the dusty air ducts, toilets in cells 2 and 3, and serving cold food to inmates, are vague and conclusory and therefore are not sufficient to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague

and conclusory accusations are insufficient to state a civil rights claim). More importantly, in none of the above-mentioned claims does Plaintiff allege how any named Defendants' actions contributed to these claims. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, No. 07-10518, 2008 WL 2875804, *4 (11th Cir. July 28, 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."))). Here Plaintiff has not alleged any action taken by a particular person, he merely provides a list of things with which he is discontented. Thus, in the absence of an allegation of any connection between any actions of the named Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against these Defendants on the above mentioned claims.

**D.     Deliberate Indifference**

Plaintiff also appears to allege that Defendant Turner was deliberately indifferent to his safety. The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. Accordingly, a prison inmate has a constitutional right to be

protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). When officials become aware of a threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012. There must be at least some allegation of a conscious or callous indifference to a prisoner's rights that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

Furthermore, Plaintiff's Eighth Amendment claim is judged by the deliberate indifference standard and must meet two requirements, one objective and one subjective. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 303 (1991). Plaintiff must first show that he suffered a deprivation that is "objectively, 'sufficiently serious,'" which means that Plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm. Farmer, 511 U.S. at 834.

Plaintiff must then also show that Defendant Turner knew of an excessive risk to his health or safety and was subjectively reckless to that risk. Id. at 837. Plaintiff must show that Defendant Turner had a "sufficiently culpable state of mind." Id. at 834. Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due

care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith."). That is, Defendant Turner must have both been aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also have drawn the inference. See Farmer, 511 U.S. at 837.

Here, Plaintiff merely asserts that Defendant Turner "pits" the inmates against each other, and told some inmates to be mad at Plaintiff. Plaintiff does allege that he lives in fear of the other prisoners, but the fact remains that he has not alleged any injury. Moreover, his allegations are both conclusory and vague. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim). Therefore, Plaintiff has failed to state a claim upon which relief can be granted for deliberate indifference to his safety. Accordingly, this claim and Defendant Turner should be dismissed from the case.

### E. Claims Against Defendants Strength, Johnson, and C.M.S.

To the extent that Plaintiff blames Defendants Strength, Johnson, and C.M.S. for the acts of their subordinates regarding Plaintiff's claims of deliberate indifference to his health and safety, and the general conditions of confinement, without alleging any personal involvement, his claims fail. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious

liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers and private contractors[4] cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000)(citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor-employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that the above-named Defendants actually participated in Plaintiff's claims of deliberate indifference to his health and safety, and the general conditions of confinement. Moreover, Plaintiff has not proffered any reason to support that these Defendants violated any of Plaintiff's constitutional rights. Plaintiff merely states that it was their duty to ensure that the staff did their jobs appropriately, or to ensure that he received appropriate medical treatment.

---

[4]Of course, private contractors that run prisons, like C.M.S., do act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Nevertheless, as explained herein, the principle that *respondeat superior* is not a cognizable theory of liability under § 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

Similarly, Plaintiff fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[5] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has alleged neither with respect to the above-named Defendants. Accordingly, Plaintiff's claims against Defendants Strength, Johnson, and C.M.S. should be dismissed.[6]

---

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[6]Plaintiff also named Defendants Strength and Johnson in connection with his discrimination claims. However, as previously noted, Plaintiff failed to state a claim upon which relief can be granted for his discrimination claims. As such, Plaintiff has not asserted any viable claims against these Defendants as to any policy that may have been set or enforced to segregate HIV-AIDS.

### III. CONCLUSION

For the reasons set forth above, this Court **REPORTS** and **RECOMMENDS** that Defendants Strength, Johnson, C.M.S. and Turner, as well as Plaintiff's claims of deliberate indifference to his safety, the general conditions of confinement, and discrimination be **DISMISSED** from the case.[7]

SO REPORTED and RECOMMENDED this 28th day of October, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7] By separate Order, the Court has directed that service of process be effected on Defendant Lee based on Plaintiff's claim for deliberate indifference to his medical needs.